AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
Southern District of Florida

**SEALED**

United States of America
v.
HENRI SHUSHAAN,
a/k/a Henry Shushan

Defendant(s)

Case No.

16-6490-Seltzer

FILED BY _____ D.C.

NOV 1 5 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  May 8, 2016 to November, 2016  in the county of  Broward  in the
Southern  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18, USC, Sections 371, 554(a), 22, USC, Section 2778 and 22 CFR, 127.1(a)(4). | Conspiracy to export goods in violation of Title 18 United States Code, Sections 554(a) and 371, and conspiracy to export defense articles, that is, ammunition without obtaining an export license in violation of Title 22, United States Code, Section 2778 and 22 Code of Federal Regulations 127.1(a)(4); and Title 18, United States Code, Section 371. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
Complainant's signature

Liz Santamaria, Special Agent FBI
Printed name and title

Sworn to before me and signed in my presence.

Date:  11/15/2016

City and state:  Fort Lauderdale, Florida

_____
Judge's signature

Barry S. Seltzer, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Liz Santamaria, being duly sworn, do hereby depose and state:

### Affiant's Background

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") currently assigned to the Miami Field Office. I have been employed in this capacity for over eleven years. Among my duties as an FBI Special Agent, I am responsible for the investigation of violations of federal law, including investigating the illegal export from the United States of weapons, commodities, technical data, and services that are regulated by the United States Departments of State and Commerce.

2.  This Affidavit is written in support of a criminal complaint against HENRI SHUSHAN. As set forth below, there is probable cause to believe that, from November 2015 through the present, in the Southern District of Florida and elsewhere, SHUSHAN knowingly and willfully conspired to export goods and defense articles, that is 23mm ammunition, from the United States to the Republic of Sudan, without first having obtained a license or written approval from the Department of State, in violation of 18 U.S.C.§ 371, 22 U.S.C. § 2778, and 18 U.S.C.§ 554.

3.  The facts contained in this affidavit are based on my own personal knowledge, observations, and experience, as well as information gathered from other law enforcement agents, intelligence analysts, banking and financial institutions, and cooperating witnesses. This Affidavit is being submitted for the limited purpose of establishing that SHUSHAN has engaged in the crimes enumerated above. I have not included each and every fact known to me concerning this investigation; instead, I have only set forth those facts and circumstances that I believe are necessary to establish probable cause to obtain a criminal complaint.

1

4. Your affiant submits that this Affidavit sets forth sufficient facts to establish probable cause to believe that from in or around November 2015, through November 2016, SHUSHAN, conspired to knowingly and willfully ~~conspired to~~ export goods and defense articles, that is 23mm ammunition, from the United States to the Republic of Sudan, without first having obtained a license or written approval from the Department of State, in violation of 18 U.S.C.§ 371, 22 U.S.C. § 2778, and 18 U.S.C.§ 554.

## Arms Export Control Act and International Traffic In Arms Regulations

5. In furtherance of the security and foreign policy interests of the United States, the Arms Export Control Act, Title 22, United States Code, Section 2778 ("AECA"), authorized the President of the United States to control the export of "defense articles" from the United States. The AECA requires every person engaged in the business of exporting defense articles from the United States to obtain a license or other approval from the United States Department of State. 22 U.S.C. § 2778(b)(1)(A)(I). The regulations promulgated pursuant to the AECA, known as the International Traffic in Arms Regulations ("ITAR"), define exporting to include, among other things, "[s]ending or taking a defense article out of the United States in any manner . . ." 22 C.F.R. § 120.17.

6. The ITAR define a defense article to be any item on the United States Munitions List ("USML") contained in the regulations. The USML sets forth twenty-one categories of defense articles that are subject to export licensing controls by the United States Department of State's Directorate of Defense Trade Controls ("DDTC"). 22 C.F.R. § 121.1.

7. No defense articles may be exported or otherwise transferred from the United States to a foreign country without prior license or written approval from DDTC. 22 C.F.R. § 123.1(a). The ITAR also prohibits re-exports, transfers, transshipments, and diversions from foreign

2

countries of previously-exported defense articles or services without DDTC authorization. 22 C.F.R. § 123.9(a).

8. At the time of the relevant conduct described herein, 23mm ammunition was a defense article designated on the USML in Category III(a), and could not and cannot be exported from the United States without a license or written approval from DDTC.

9. Under ITAR Section 126.1(v), it was the policy of the United States to deny licenses or other approval for exports of defense articles destined for the Republic of Sudan, with certain exceptions pertaining to United Nations and other humanitarian purposes. In addition, the Government of the Republic of Sudan was subject to a comprehensive United States trade embargo. *See, e.g.*, Exec. Order 13,412, 71 Fed. Reg. 61,369 (Oct. 17, 2006) (Blocking Property and Prohibiting Transactions With the Government of Sudan); 31 C.F.R. part 738 (Sudanese Sanctions Regulations).

10. Neither SHUSHAN nor any co-conspirator identified herein ever received or possessed a license from DDTC to export defense articles.

11. It was also unlawful for a person to violate United States smuggling laws. Title 18, United States Code, Section 554(a) made it a federal crime to fraudulently or knowingly export or send from the United States, or attempt to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

12. According to documentation SHUSHAN filed on or about April 24, 2015 with the State of Florida, Department of State Division of Corporations, SHUSHAN is the President of

SHS Consulting Inc, Principal and Mailing address located at 700 SE 9th Street, Apt 106, Dania Beach, FL 33004.

13. On or about August 18, 2015, SHUSHAN opened a corporate bank account in the name of SHS CONSULTING INC at Wells Fargo Bank, account number ending in 1885. SHUSHAN was the sole owner and signer on the account.

14. On or about December 14, 2015, SHUSHAN filed documentation with the State of Florida Department of State Division of Corporations listing SHS Consulting Inc., address 700 SE 9th Street, # 106, Dania, FL 33004, as the owner of Starmis Arms, which was listed with a mailing address of 4699 N. Federal Highway, Suite 208 E, Pompano Beach, FL 33064.

15. On or about September 9, 2015, SHUSHAN submitted an application for a Federal Firearms License to the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), identifying SHS CONSULTING INC as the owner or corporation, with a trade or business name of STARMIS ARMS, business address located at 4699 N, Federal Highway, #208E, Pompano Beach, Florida 33064, and a mailing address of 700 SE 9th Street, # 106, Dania, FL 33004.

16. On or about November 15, 2015, ATF granted SHUSHAN a license to import firearms, deal in firearms, and manufacture firearms. These licenses were issued in November 2015 and March 2016.

17. DDTC records identify that SHS Consulting filed a paid registration with DDTC as a manufacturer and exporter of defense articles, which is active through January 31, 2017. This registration serves as a precondition to obtaining a license for any defense article to be exported from the United States under the ITAR. DDTC records show that the only export license SHS Consulting has applied for was submitted on or about May 23, 2016 for the shipment from the

United States to Israel of: fifty (50) Glock Model 19 Gen 4 semi-automatic pistols; forty (40) Glock Model 26 Gen 4 semi-automatic pistols; ten (10) Clock Model 17 Gen 4 semi-automatic pistols; five (5) H&K P30 semi-automatic pistols, five (5) H&K VP9 semi-automatic pistols; five (5) Walther PPQ semi-automatic pistols; and five (5) FN FNX semi-automatic pistols. DDTC returned this application without action due to the failure of SHS Consulting to provide additional information requested by DDTC to support the application. DDTC records identify no other license applications submitted by or involving SHS Consulting, Starmis Arms or Henri SHUSHAN.

### Conspiracy to Export 23mm Ammunition to the Republic of Sudan

18. On or about May 8, 2016, SHUSHAN called an FBI confidential source ("CHS 1"), asking CHS 1 for 100 Zu-23 machine guns (23 mm anti-aircraft machine guns) and 100 KPV 14.5 mm machine guns, both of which are Russian-made, along with 100,000 rounds for both types of weapon.

19. On or about August 30, 2016, CHS 1 spoke with a business associate of SHUSHAN, who discussed wanting to purchase 23mm ammunition that would go to Turkey through the Republic of Cyprus.

20. On or about September 16, 2016, as a follow up to a request made by SHUSHAN to CHS 1 on May 8, 2016, using WhatsApp, a secure mobile communication application, SHUSHAN sent CHS 1 a picture of a supposed end user certificate for 750,000 rounds of 23mm ammunition. The end user certificate identified the end user as "Ministry of Defence TRNC," which is believed to refer to the Turkish Republic of Northern Cyprus, and the end use as "ARMY." SHUSHAN advised CHS 1 that he had falsified this end user certificate to facilitate the export of the ammunition to Cyprus, after which it would be sent on to the Republic of Sudan,

which he referred to as Sudan. The end user certificate identified the purported U.S. exporter as "Royal Trade Industries" and provided an address that was the location of SHS CONSULTING INC and STARMIS ARMS.

21. On or about September 19, 2016, SHUSHAN informed CHS 1 that a specific individual (Individual #1) would be coming to the United States to see the 23mm ammunition that was to be shipped to Cyprus.

22. On or about September 20, 2016, CHS 1 was advised by a business associate of SHUSHAN that the true end user for the 23mm ammunition was in Sudan and not in Cyprus, and the business associate asked if CHS 1 could arrange shipment of the ammunition to Sudan.

23. On or about September 23, 2016, CHS 1 spoke with SHUSHAN and his business associate and was advised that Individual #1 had attempted to come to the United States to view the 23mm ammunition, but his visa was revoked. SHUSHAN's business associate advised CHS 1 that Individual #1 was travelling to the United States as a tourist and did not say anything to anyone about why he was traveling to the United States. SHUSHAN's business associate advised CHS 1 that Individual #1 was briefly held and then sent back to Dubai, United Arab Emirates.

24. On or about September 24, 2016, CHS 1 spoke with SHUSHAN, and was advised that CHS 1 would be paid between $400,000 and $500,000 in advance to ship the 23mm to South Africa and then to Sudan.

25. On or about September 26, 2016, CHS 1 spoke to SHUSHAN's business associate who advised all business deals should be done through him and that he will close all deals with CHS. SHUSHAN's business associate acknowledged that the 23mm can't go directly to Sudan and suggested picking it up in South Africa first. This business associate also advised there was a client in Saudi Arabia who wanted 23mm ammo.

6

26. On or about September 26, 2016, CHS 1 spoke to SHUSHAN. SHUSHAN wanted to know the status of the 23mm deal to purchase 500,000 rounds at $3.30 a round. SHUSHAN offered to pay $400,000 up front for 150,000 rounds as an initial shipment and then purchase more later. CHS 1 advised that he didn't know if the vendor wanted to do the deal because of SHUSHAN's "client" being denied entry the previous week.

27. On or about September 28, 2016, CHS 1 spoke SHUSHAN to discuss the pending 23mm deal. SHUSHAN confirmed they would pay for the first shipment of ammo, 150,000 rounds at $3.30 per round, and would transfer money to CHS 1 prior to shipping. SHUSHAN told CHS 1 he would advise him when payment was ready to be sent.

28. On or about September 28, 2016, CHS 1 spoke to SHUSHAN's business associate regarding the logistics and shipping of the 23mm ammo deal. The business associate requested photos of the 23mm ammo. The business associate advised that the first purchase of 23mm ammunition was for Sudan and that Cyprus was no longer being used to ship because something went wrong, and now South Africa would be used as the transshipment point. The associate further advised CHS 1 that the second batch of 350,000 rounds of 23mm ammo was for Iraq. CHS inquired about how it would be shipped to Iraq, and the business associate advised they would pick it up in Guatemala, to which CHS said they couldn't because they wouldn't get an export license. The associate replied not to worry because they would make it work.

29. On or about September 28, 2016, CHS 1 spoke with both SHUSHAN and his business associate about the 23 mm ammunition and confirmed that CHS 1 would be paid in advance for the shipment.

30. On or about September 29, 2016 CHS 1 engaged in a WhatsApp conversation with SHUSHAN and verified that photos of the 23mm ammunition, which CHS 1 had sent to

SHUSHAN's business associate, had been received. SHUSHAN advised that he was trying to obtain a bank guarantee for the client who was purchasing the 23mm ammunition and would confirm when he could transfer $495,000 to CHS1 as payment for the ammunition.

31. On October 5, 2016, SHUSHAN sent CHS 1 an email containing two purported end user certificates for 500,000 rounds of 23 ammunition to be sent to Sudan from Guatemala. The end user certificates listed 500,000 "units" (i.e., rounds) of 23mm SU23-HEI-T ammunition, identifies the name of ultimate end user as "the Ministry of defense of the republic of Sudan," and states that the ammunition is to be used "for official military use only."

32. On or about October 6, 2016, SHUSHAN requested that CHS 1 provide documents for the 23mm ammunition, including a packing list, commercial invoice, and bill of lading. SHUSHAN advised CHS 1 that when he receives the letter of credit for the client from the bank and shipping documents from CHS 1, SHUSHAN will arrange the payment of $495,000 to CHS 1.

33. On or about October 17, 2016 SHUSHAN advised CHS 1 that the client had wired $800,000 to SHUSHAN's Wells Fargo account from a bank in Iraq for the purchase of the 23mm ammunition, but his bank had questioned the wire transfer and wanted an explanation.

34. On or about November 2, 2016, SHUSHAN advised CHS 1 that the wire transfer would not go through and that the client would be coming to the United States the following Tuesday (i.e., November 8, 2016) to pay CHS 1 for the 23mm ammunition.

35. On or about November 4, 2016, SHUSHAN informed CHS 1 that an individual would be travelling to Florida on November 8, 2016 to meet CHS 1 and inspect the 23mm ammunition, and that this individual was from Belarus.

36. On or about November 8, 2016, the CHS was informed that the individual who was supposed to travel to Florida to inspect the 23mm ammunition was ill and the meeting would be postponed until Tuesday, November 15, 2016.

Your affiant submits that this Affidavit sets forth sufficient facts to establish probable cause to believe that HENRI SHUSHAN knowingly and willfully conspired to export goods and defense articles, that is 23mm ammunition, from the United States to the Republic of Sudan, without first having obtained a license or written approval from the Department of State, in violation of 18 U.S.C.§ 371, 22 U.S.C. § 2778, and 18 U.S.C.§ 554.

FURTHER AFFIANT SAYETH NAUGHT

Special Agent Liz Santamaria
Federal Bureau of Investigation

Subscribed and sworn to before me
This 15 day of November, 2016.

BARRY S. SELTZER
United States Magistrate Judge

9